UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BASILIO L., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 20 CV 2002 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Basilio L. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court grants plaintiff's request to reverse the SSA's decision and remand this case to the agency [22],[2] denies the Commissioner of Social Security's motion for summary judgment [26], and reverses the SSA's decision.

**Background**

In early August 2016, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of October 19, 2015. [12-1] 23. Plaintiff's claims were denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on September 11, 2018. [*Id.*]. In a decision dated December 24, 2018, the ALJ ruled that plaintiff was not disabled. [*Id.*] 38. The Appeals Council denied review on January 23, 2020, making the ALJ's decision the agency's final decision. [*Id.*] 1-3. *See* 20 C.F.R. §§ 404.955, 404.981.

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, with the exception of citations to the administrative record [12], which refer to the page numbers in the bottom right corner of each page.

Plaintiff timely appealed to this Court. [1]. The Court has jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).[3], [18].

Plaintiff was 50 years old on his alleged disability onset date. [12-3] 198. Before applying for benefits, plaintiff worked as a landscape and concrete paving laborer. [*Id.*] at 203. He attended school in Mexico through sixth grade. [12-1] 49. Plaintiff applied for benefits telephonically by answering an SSA field officer's interview questions. [12-3] 199. The field officer noted no difficulties in taking plaintiff's information. [*Id.*] 200. According to plaintiff's application, plaintiff reported that he can speak, read, and understand English, but cannot write more than his name in in the language. [*Id.*] 201. During plaintiff's doctor's appointments, a Spanish interpreter often obtained plaintiff's medical history and explained to plaintiff his doctor's proposed course of treatment. [12-4] 325, 388; [12-5] 429-30, 467, 471-72, 493; [12-6] 509, 513-14; [12-7] 690. Plaintiff's prescriptions were also labeled in Spanish. [12-4] 354, 367, 373.

During the administrative hearing, plaintiff testified through a Spanish interpreter. [12-1] 45. The ALJ asked plaintiff about his English-language abilities:

> Q: [A]re you able to speak any English?
> A: Not much.
>
> Q: Are you able to understand English any better than you can speak it?
> A: Maybe a little bit, I understand a little bit, but I hardly talk.
>
> Q: You primarily, then, speak Spanish?
> A: Spanish.
>
> Q: Are you able to read and write in Spanish?
> A: In Spanish, yes.
>
> Q: But not in English?
> A: No.

[*Id.*] 50.

Later on in the hearing, the ALJ asked Vocational Expert ("VE") Katrina Mason whether a hypothetical person "who is closely approaching advanced age, has a . . . marginal education, [the] same work history as [plaintiff]" and an RFC limiting him to lifting and carrying twenty pounds occasionally, ten pounds frequently; standing or walking about six hours in an eight-hour day, sitting about six hours; occasionally climbing ladders, ropes, or scaffolds and stairs and ramps; occasionally balancing and

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [18].

stooping; and the individual would require a cane in order to ambulate, could perform any work. [12-1] 70-72. The VE testified that a number of unskilled light jobs would be available, including an inspector packer or a small products assembler (approximately 100,000 jobs), or an electrical accessory assembler (80,000 jobs). [*Id.*] 72-73. Following the ALJ's questioning, plaintiff's counsel asked the VE, if assuming the ALJ's hypothetical person was also illiterate, would that implicate grid rule 202.09 of the Medical-Vocational Guidelines (grid rules). [*Id.*] at 75. Before the VE could answer, the ALJ stated, "That's a legal conclusion that I will reach, I will not allow testimony on that . . . ." [*Id.*].

## Legal Standard

Under the Social Security Act, disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform his past relevant work (i.e., the claimant retains the residual functional capacity (RFC) to perform his past); and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience (i.e., able to perform any other work existing in significant numbers in the national economy). *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

"The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence." 42 U.S.C. §405(g). Substantial evidence is a standard that "requires more than a mere scintilla of proof and instead such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted); *see also Berger v. Astrue*,

516 F.3d 539, 544 (7th Cir. 2008) ("When an ALJ recommends that the agency deny benefits, it must first 'build an accurate and logical bridge from the evidence to the conclusion.'") (internal citation omitted).

## The ALJ's Decision

At Step One, the ALJ found that plaintiff had not performed substantial gainful activity since his alleged onset date of October 19, 2015. [12-1] 25. At Step Two, the ALJ determined that plaintiff had the following severe impairments: degenerative joint disease ("DJD") of the right knee, status post total arthroplasty and multiple revisions; DJD of the left knee; obesity; and degenerative disc disease ("DDD") of the lumbar spine. [*Id.*] 26.

At Step Three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. [*Id.*] 27. The ALJ examined listings 1.02 and 1.04 but ultimately found insufficient evidence of ineffective ambulation for twelve months or longer for plaintiff's impairments to meet either listing. [*Id.*] 28.

Before turning to Step Four, the ALJ found that, considering the entire record, plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except plaintiff can occasionally climb ladders, ropes, scaffolds, stairs, or ramps and occasionally balance, stoop, kneel, crouch, or crawl. [*Id.*] 28-29. The ALJ added that plaintiff requires a cane to ambulate. [*Id.*] 29. In making this finding the ALJ considered: (a) plaintiff's and the VE's hearing testimony; (b) plaintiff's reported pain levels during treatment; (c) treatment notes; (d) medical referrals; and (e) plaintiff's return to work after his 2014 knee replacement. [*Id.*] 30-31, 33-34. The ALJ found while plaintiff did have several medically determinable impairments that could reasonably be expected to produce his alleged symptoms, plaintiff's statements concerning "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." [*Id.*] 30. The ALJ explained that while plaintiff testified he suffers from severe pain in his back and knee that would be markedly disruptive and a work barrier, plaintiff was able to return to at least medium work, could travel to Mexico, and was not prescribed pain medication or pain clinic treatment. [*Id.*] 35. Further, the ALJ found plaintiff's claim that his impairments cause significant functional limitations, undermined by exam records showing plaintiff recovered well from his knee surgeries and has mild limits in his right knee. [*Id.*]. Acknowledging plaintiff's knee range of motion limitations and use of a cane, the ALJ nonetheless found the exams did not show an ongoing and severe strength or sensory deficit, but effective ambulation with a cane within twelve months. [*Id.*]. The ALJ concluded there is insufficient evidence to confirm plaintiff's reported intractable pain levels and support an RFC finding that plaintiff can stand/walk for less than six hours total in an eight-hour workday. [*Id.*].

4

At Step Four, the ALJ ruled that plaintiff was unable to perform his past relevant work. [*Id.*] 36. At Step Five, the ALJ concluded the grid rules do not direct a finding of disability considering plaintiff's RFC, age, education, and work experience. [*Id.*] 37 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). The ALJ went onto find plaintiff could perform jobs that exist in significant numbers in the national economy. [*Id.*]. The ALJ therefore concluded a finding of "not disabled" was appropriate. [*Id.*] 38.

## Discussion

Plaintiff contends the ALJ's conclusion that plaintiff is able to communicate in English is unsupported by substantial evidence. [22] 9-10. Plaintiff argues this is reversible error because if plaintiff is unable to communicate in English, the grid rules may direct a finding of disability. [*Id.*] 9.[4] Plaintiff explains that the ALJ cited no evidence showing plaintiff could "read, write, or speak simple messages in English." [*Id.*] 9-10 (citing POMS DI 25015.010). Instead, plaintiff argues, the ALJ homed in on plaintiff's telephonic disability interview to find plaintiff capable of communicating in English, ignoring plaintiff's reoccurring need for an interpreter during doctor's appointments and at the administrative hearing. [*Id.*] 10. The

---

[4] The Court notes plaintiff withdrew this argument in his reply brief [30] 1 n.1, apparently based on the Commissioner's brief that noted that 20 C.F.R. § 416.964 was amended effective April 27, 2020, [27] 12 n.2. The amended version eliminated "inability to communicate in English" as an education category the SSA considered in evaluating a claimant's education level and relatedly in determining if a claimant is disabled under the grid rules. *Compare* 20 C.F.R. § 416.964 (version in effect on Jan. 23, 2020) with 20 C.F.R. § 416.964 (as amended); available at https://www.ecfr.gov/compare/current/to/2020-02-25/title-20/chapter-III/part-416/subpart-I/subject-group-ECFR16863d8d81c8146/section-416.964 (last visited March 24, 2023). The agency's final rule states the SSA will implement the amended version following "standard practice," that is, "to implement the final rule as of the effective date for all pending claims, [Continuing Disability Reviews], and new applications." "Removing Inability to Communicate in English as an Education Category," 85 Fed. Reg. 10586-01, 10595 (Feb. 25, 2020) (to be codified at 20 C.F.R. Pts. 404, 416). Because the agency's decision became final on January 23, 2020, three months before the amended version went into effect, the prior version of 20 C.F.R. § 416.964 and accompanying grid rule 202.09 apply. [12-1] 1-3. *See Washington v. Saul*, 788 Fed. App'x 388, 389 (7th Cir. 2019) ("For a decision to be "final" under Title II of the Social Security Act, the claimant must complete a multi-step administrative review process" where the last step is "review by the Appeals Council.") (internal citations omitted); *see also Smith v. Berryhill*, 139 St. Ct. 1765, 1772 (2019). Despite plaintiff's withdrawal of the argument—which appears to be based on a misunderstanding of which version of the regulation applies—plaintiff argues generally that the ALJ's conclusions are unsupported by substantial evidence and, fundamentally, an applicant for disability benefits cannot waive the substantial evidence standard used for judicial review of agency factfinding. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019); *see also* 42 U.S.C.A. § 405(g). Accordingly, this Court concludes that it is appropriate to review for substantial evidence the ALJ's conclusion that plaintiff could communicate in English and, thus, was not disabled under the grid rules. [30] 2.

5

Commissioner responds that the ALJ's decision should be upheld because plaintiff's disability application indicates that plaintiff had no difficultly answering questions during the disability interview, and nothing suggests the interview was conducted in Spanish. [27] 12. The Commissioner adds that treatment notes for a couple of plaintiff's doctor's appointments do not chart the use of an interpreter and the presence of a translator at the administrative hearing does not automatically raise an illiteracy argument. [*Id.*] 13-14 (citing *Rivera v. Comm'r of Soc. Sec.*, 2014 WL 4956224, at *13 (N.D. Oh. Sept. 30, 2014)). The Court agrees with plaintiff and concludes that the ALJ's finding that plaintiff can communicate in English is unsupported by substantial evidence and reversible error.[5]

### I.  The ALJ's Conclusion that Plaintiff is Able to Communicate in English is Unsupported by Substantial Evidence.

"The Commissioner's Medical Vocational Guides, or Grid, 'reflect the SSA's determination that certain combinations of age, education, work experience, and exertional limitations direct a finding of either disabled or not disabled at step five of the disability analysis.'" *Malgorzata v. Kijakazi*, No. 20 C 296, 2022 WL 2257122, at *2 (N.D. Ill. June 23, 2022) (quoting *McKay v. Colvin*, No. 15 C 9522, 2016 WL 6432582, at *4 (N.D. Ill. Oct. 31, 2016)). If a claimant's medical vocational coordinates fall squarely on a grid rule, then that outcome determines the case. 20 C.F.R. § 404.1569 ("[I]f the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled.").

Under grid rule 202.09, a claimant who is: (a) limited to light work; (b) closely approaching advanced age; (c) illiterate or unable to communicate in English; and (d) whose previous work experience was unskilled is considered disabled. 20 C.F.R. Pt. 404, Subpt. P., App. 2, Tbl. No. 2.[6] The ALJ determined plaintiff met three out of the four listed elements: plaintiff is limited to light work, he was closely approaching advanced age on the alleged disability onset date, and his prior work experience was unskilled. [12-1] 28, 37 (citing 20 C.F.R. §§ 404.1563(d), 404.1567(b), 404.1568(a)). The issue then is whether the ALJ's finding that plaintiff did not meet the remaining element, i.e., that plaintiff could communicate in English, is supported by substantial evidence and that the ALJ properly found grid rule 202.09 inapplicable.

The Court finds the ALJ's conclusion that plaintiff is able to communicate in English is unsupported by substantial evidence. A person who is illiterate in English, regardless of what other language that person is fluent in, is unable to communicate in English. *See Yasin v. Heckler*, No. 85 C 1909, 1986 WL 4161, at *3 (N.D. Ill. March 19, 1986); *see also Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *5-6 (N.D. Ill. Oct. 20, 2015). Under the SSA's regulations, illiteracy means "the inability to read

---

[5] Because this issue is dispositive, the Court need not address plaintiff's other arguments.
[6] As explained above in footnote 4, the Court reviews the ALJ's decision under the regulations in effect on January 23, 2020, the date of the agency's final decision. [12-1] 38.

or write" and a person is considered illiterate if they "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). Here, the ALJ found plaintiff could communicate in English because "[i]t was clear that [plaintiff] could understand and speak at least some English at the hearing and he had no difficulties when he submitted his application by telephone." [12-1] 37. The ALJ's conclusion focuses on plaintiff's ability to speak English, where the critical inquiry is whether plaintiff can read or write in English, in other words, whether plaintiff is literate in English. 20 C.F.R. § 404.1564(b)(1).

First, plaintiff's ability to "speak some English" at the hearing "does not equate to an admission of English literacy under the regulations." *See Salazar*, 2015 WL 6165142, at *5. Second, while the SSA field officer noted "no difficulties" in taking plaintiff's information for his disability application over the phone, this hardly establishes plaintiff is literate in English. [12-3] 200. *See Yourek v. Barnhart*, 334 F.Supp.2d 1090, 1093 (N.D. Ill. 2004) (finding the claims representative's observation that claimant had no difficulty completing his application was insufficient evidence for the ALJ to conclude claimant was literate). While the Commissioner argues that nothing suggests that this interview was conducted in Spanish, nothing suggests that the interview was conducted in English. [27] 12. It is just as likely that plaintiff spoke to a Spanish-speaking representative, as the Social Security website advertises that interpreter services are available by phone by simply calling the number and pressing seven to wait for a Spanish-speaking representative.[7] And, even assuming as the Commissioner would suggest, that the phone interview was taken in English, this would not establish that plaintiff could read or write in English, i.e., was literate in English, as required under the regulations. *See* 20 C.F.R. § 404.1564(b)(1). During the interview, plaintiff even reported he could write no more than his name in English. [12-3] 201. As stated above, the ability to write one's name in English, does not, by itself, establish a person is literate in English. 20 C.F.R. § 404.1564(b)(1).

Instead, the record included ample evidence suggesting plaintiff cannot communicate in English. At the hearing, plaintiff testified with the aid of an interpreter. [12-1] 45. Plaintiff's medical treatment records, that were reviewed and updated during each visit, repeatedly note plaintiff's "preferred language is Spanish" and that "the patient needs an interpreter." [12-4] 345, 348, 355-57, 363, 370, 373, 379, 380, 384, 391, 395. Plaintiff's prescriptions were also labeled in Spanish. [*Id.*] at 354, 367, 373. The ALJ's reliance on the few medical treatment notes that did not report use of an interpreter would have the Court rely on assumptions to establish that plaintiff is literate in English. [12-1] 26, 31 (citing [12-4] 307, 325, 353-62; [12-6] 511). That, the Court will not do. *See Yassin,* 1986 WL 4161, at *4 ("For the ALJ to

---

[7]https://www.ssa.gov/multilanguage/interpreter.html#:~:text=If%20You%20Need%20An%20Interpreter%20(En%20espa%C3%B1ol)&text=These%20interpreter%20services%20are%20available,speaking%20representative%20to%20help%20you (last visited March 24, 2023).

assume that these activities necessarily involved reading English messages violated plaintiff's right to have the decision based solely on facts in the record . . . .").

Further, in questioning plaintiff, the ALJ asked him if he is able to read and write in English and plaintiff answered no. [12-1] 50. *See Salazar*, 2015 WL 6165142, at *5 (finding the ALJ's conclusion that claimant could communicate in English was inconsistent with her decision that stated, "he does not read or write in English."). At that point, the ALJ had a duty to develop enough of a record to determine if plaintiff was literate in English and failed to do so. *See Yourek*, 334 F.Supp.2d at 1093 (reversing the ALJ's denial of disability benefits where the ALJ failed to ascertain claimant's literacy level by asking him to read a brief article or write a note after claimant testified, he "was not a good reader but could read words slowly."). Plaintiff's reported ability to write his name in English and testified ability to understand English "a little bit" is not enough to support a conclusion that plaintiff can read a simple message or inventory list, as is required by the regulation defining illiteracy. [12-1] 50. *See Yassin,* 1986 WL 4161, at *3 (citing 20 C.F.R. § 404.1564(b)(1)); *see also Vega v. Harris*, 636 F.2d 900, 904 (2d Cir. 1981) (finding even a brief exchange in English between an ALJ and a claimant "is not a substitute for a determination on the question of ability to communicate in English."). The Court finds, in light of the ALJ's failure to develop the record to determine whether plaintiff is literate in English, substantial evidence does not support the ALJ's conclusion that plaintiff is able to communicate in English.

## II. The ALJ's Failure to Account for Literacy in Determining Plaintiff Could Communicate in English is Not Harmless Error.

The ALJ had to "consider [plaintiff's] ability to communicate in English" when he "evaluate[d] what work, if any, he . . . can do." 20 C.F.R. § 416.964(b)(5). Here, the ALJ relied on the VE's testimony to find that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, and ultimately conclude that a result of "not disabled" is appropriate. [12-1] 38. Had the ALJ determined whether plaintiff is literate in English and asked the VE to adjust the number of jobs in the economy for plaintiff's English-language limitations, it is uncertain whether the VE would continue to testify that jobs exist in the economy that plaintiff could perform. *See Dubravac v. Berryhill,* No. 17 CV 50228, 2018 WL 6603635, at *2-4 (N.D. Ill. Dec. 17, 2018) (remanding where ALJ failed to request an explanation why plaintiff can perform jobs that exist in the economy despite her illiteracy in English.). As shown above, the ALJ did not ask the VE to adjust the number of jobs in the economy for plaintiff's English-language limitations or allow plaintiff's counsel to solicit the VE's testimony on the subject. [12-1] 70-72, 75. Further, the VE herself did not testify that the jobs she identified plaintiff had the capacity to perform would accommodate plaintiff's English-language ability, or more generally a range of abilities. *Cf. Duran v. Shalala*, No. 92–4092, 1994 WL 408186, at *5 (C.D. Ill. Apr. 12, 1994) (affirming denial of disability where VE testified that the jobs claimant

8

could perform "would accommodate a range of abilities to speak in English, from excellent to having a poor ability.").

Because plaintiff was closely approaching advanced age, has previous unskilled work, and has a light work RFC, he could have been categorized as "disabled" under grid rule 202.09 had the ALJ determined plaintiff was unable to communicate in English. 20 C.F.R. Pt. 404, Subpt. P., App. 2, Tbl. No. 2. As such, the ALJ's evaluation whether plaintiff is unable to communicate in English, that must take into account plaintiff's literacy in English, is important to the determination of disability. Therefore, the Court cannot find the ALJ's error was harmless. *See Malgorzata*, 2022 WL 2257122, at *4. To be clear, the Court does not hold the ALJ must find plaintiff literate in English; rather the ALJ must determine whether plaintiff is literate in English and support his finding with substantial evidence, before concluding that plaintiff is or is not able communicate in English.

For that reason, as well as the other reasons discussed above, the case must be remanded.

## Conclusion

The decision of the SSA is reversed, and in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 30, 2023**